IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | | |
|---|---|---|
| WARREN WAR CLUB, | ) | Cause No. CV 07-69-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; MIKE McGRATH, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On May 14, 2007, Petitioner Warren War Club (hereafter "War Club") filed this action for writ of habeas corpus under 28 U.S.C. § 2254.[1]  He is a state prisoner proceeding pro se.

Respondents (hereafter "the State") filed an Answer on November 27, 2007.  On February 19, 2008, the State gave notice that it had submitted all appropriate materials except for two competency evaluations ordered by War Club's former defense counsel, who declined to release the documents without a court order.

On July 15, 2008, War Club moved for leave to amend his petition.  The motion requests additional time to gather evidence showing his innocence.  See Pet'r Mot. for Leave (Doc. 23) at 2-3.

_____

[1] War Club filed a separate signature page on May 18, 2007.  While the State trial documents spell his name as one word, Warclub, he appears to sign his own name as two separate words, War Club.  Therefore, the latter spelling will be used.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

The State responded to the motion on July 18, 2008.

As the State's Answer points out, War Club's petition is almost certainly procedurally barred and time-barred.  Only with the most generous construction of his claim, as illuminated by the state court record, can he even be said to allege a violation of federal law.  See Answer (Doc. 8) at 11-13, ¶¶ 13-17.  However, because he asserts that he is actually innocent, resolution of those threshold issues may become intertwined with the merits.  See, e.g., Schlup v. Delo, 513 U.S. 298, 327 (1995); Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002).  There is an outstanding question as to whether War Club reasonably believed he had filed a postconviction petition.  Additionally, the Montana Supreme Court's opinion mentioned a psychiatric evaluation, which might have been relevant to the threshold issues in this Court.  See State v. Warclub, 114 P.3d 254, 256 ¶ 12 (Mont. 2005); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003). Moreover, the Court must be mindful of the fact that pro se documents demand liberal construction. See Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (per curiam); United States v. Seesing, 234 F.3d 456, 462 (9th Cir. 2000); see also Bonin v. Vasquez, 999 F.2d 425, 428-29 (9th Cir. 1993) (discussing Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986) (per curiam); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).

Without the state court record, all of these considerations counseled against immediate dismissal of the petition.  For that reason, the Court required an Answer.  Now, the State's Answer and the state court record make it clear that War Club is not entitled to relief.

## I. Factual and Procedural Background

The following background is taken primarily from transcripts of the proceedings in state

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

court.

On October 1, 2001, War Club was drinking in an alley outside The Rainbow, a bar in Billings, Montana, with Domingo Pacheco. After they had consumed about half a bottle of vodka, War Club stabbed Pacheco 23 times in the stomach with a five-inch double-bladed knife. War Club's nephew, Christopher War Club (hereafter "Christopher"), witnessed the stabbing. Christopher was also with War Club earlier that day when War Club bought the knife at a pawn shop. Shortly after the stabbing and not far from the scene of the crime, a Holiday store clerk saw that a customer matching War Club's description was covered in blood and was carrying a large knife. The clerk called 911. Shortly after that, the 911 center received a call from another man a few blocks away from the Holiday store. That witness also reported seeing a man of War Club's description, bloodied and carrying a large knife.

The day after the murder, War Club gave a statement to a detective. He admitted that he stabbed Pacheco because, he said, Pacheco touched him. War Club described the knife he used. The blood on his clothes was identified as Pacheco's. Surveillance videotape from the Holiday store showed War Club holding the knife shortly after the murder. Pacheco's blood was also on War Club's hands, but that evidence was suppressed under state law. See Tr. re: Change of Plea at 18:8-24:5 (State Ex. L18-L24 (Doc. 13 #1)); Tr. re: Mot. to Withdraw Plea at 122:14-22 (State Ex. D15 (Doc. 8 #4)).[2]

On October 5, 2001, War Club was charged with deliberate homicide in Montana's Thirteenth Judicial District Court, Yellowstone County. He entered a plea of not guilty on October

_____

[2] The transcript of this hearing extends from State Ex. B (Doc. 8 #2) at 2 through State Ex. G (Doc. 8 #7) at 44.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

9, 2001.  The Yellowstone County Public Defenders were appointed to represent him.  Sandy Selvey

was lead counsel.  Selvey filed various motions to suppress and other pretrial motions.  See Warclub,

114 P.3d at 255 ¶¶ 3, 5.

Trial was set for July 30, 2002.  On July 12, 2002, the trial court held a hearing on War

Club's pro se motion to dismiss counsel.  War Club stated that he intended to retain Kevin Gillen

as counsel and would no longer require the services of the Public Defenders.  The court directed

Selvey and co-counsel Roberta Drew to assist War Club in contacting Gillen.  See Tr. re: Mot. to

Remove Counsel (State Ex. J2-J15 (Doc. 8 #10)).  Gillen did not make an appearance, and Selvey

and Drew remained on the case.  See Warclub, 114 P.3d at ¶ 4.  No question was raised as to War

Club's competency to proceed or to assist in his own defense.

On July 24, 2002, War Club appeared for a change of plea hearing.  When the trial court

inquired into the factual basis for the plea, War Club said, "[T]his guy touched me so I stuck him."

He also said he then "blacked out."  See Tr. re: Change of Plea at 10:15, 12:11 (State Ex. L10, L12).

Selvey said he had considered self-defense but was not able to substantiate it.  The trial court then

asked War Club, "Do you feel like you had to stab this guy to prevent him seriously injuring or even

killing you?"  War Club said, "Yeah."  See id. at 13:1-18 (State Ex. L13).  The trial court explained

that War Club was entitled to tell his side of the story to a jury if he chose to do so.  War Club

became confused, and the matter was adjourned temporarily to permit him to consult with counsel.

See id. at 13:19-17:7 (State Ex. L13-L17).  When the court reconvened, War Club said that he

wanted to plead guilty and that he did not act in self-defense.  The trial court accepted his guilty plea.

See id. at 18:8-19:7, 26:7-10 (State Ex. L18, L26).  Again, no question was raised as to War Club's

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

competency to proceed or to assist in his own defense, and the trial court specifically observed that

War Club did not "seem to be suffering from any disabilities that affect[] your reasoning powers."

War Club agreed there was no such concern.  See id. at 25:21-26:7 (State Ex. L25-L26).

Three days later, on July 27, 2002, War Club sent Selvey a note stating that he wanted to

withdraw his guilty plea.  The trial court held a hearing on September 10, 2002.  Selvey described

the note as follows:

> He made complaints in the letter referencing that maybe it was a mitigated homicide,
> that he was in a blackout, that he didn't truly understand all of his rights, and that he
> was generally dissatisfied with his representation; and that foremost and most
> important to him is that he wanted to withdraw his guilty plea because he hadn't been
> adequately advised of his constitutional rights to a jury trial, and so forth.

Tr. re: Second Mot. to Remove Counsel at 3:16-24 (State Ex. K8 (Doc. 10 #1)).  War Club stated

that he believed his attorneys did not see him often enough and were "against" him.  He also denied

any recollection of the change of plea hearing.  See id. at 5:7-7:24 (State Ex. K10-K12).  At that

point, the trial court ordered a competency evaluation.  See id. at 10:14-25 (State Ex. K15).

War Club refused to cooperate with the evaluator, Dr. Rich.  See, e.g., Tr: re Pro Se Mots.

at 12:9-15 (State Ex. H12 (Doc. 8 # 8)).  On October 1, 2002, the trial court appointed Melissa

Edwards as War Club's counsel for the purpose of investigating his claims against the Public

Defenders.  War Club almost immediately claimed that Edwards too was ineffective.  After a hearing

on that issue on October 24, 2002, the trial court ordered her to continue as counsel.  See Warclub,

114 P.3d at 256 ¶ 12.

On December 23, 2002, War Club moved to withdraw his guilty plea pursuant to Mont. Code

Ann. § 46-16-105(2).  He argued that counsel was ineffective in advising him to enter it and asserted

that the trial court erred in failing to ask him at the change of plea hearing whether he was satisfied

with counsel's performance.  A hearing was held over three days, January 7, 8, and 9, 2003.  At the

start of the hearing, Edwards described one of War Club's grounds for withdrawing his plea as

involving "newly discovered evidence which we felt was exculpatory in nature" and testimony from

witness James Moore and War Club's brother Robert,[3] who was involved in discussions with War

Club about changing his plea.  Edwards and War Club chose not to pursue that ground for relief and

they released Moore and Robert from their subpoenas.  See Tr. re: Mot. to Withdraw Plea at 2:4-3:19

(State Ex. B6-B7); see also id. at 143:12-146:25 (State Ex. D36-D39); Case Register Report at 3-4

(State Ex. K3-K4).

At the hearing, War Club testified that he had told counsel all along that "this whole charge

of deliberate homicide, it's all a lie from day one."  Tr. re: Mot. to Withdraw at 58:6-7 (State Ex. C8

(Doc. 8 #3)).  He also said that he pled guilty in order to avoid a harsher sentence and because Selvey

"always told me I didn't have a chance and I was going to always lose if I tried to take it to court."

See id. at 40:10-41:3 (State Ex. B44-B45); id. at 57:23-58:2 (State Ex. C7-C8).  A deputy

Yellowstone County attorney testified that the judge at one point had indicated he would consider

a twenty-year prison sentence with a no-parole restriction[4] and that he relayed that possibility to his

superiors.  See id. at 82:1-84:12 (State Ex. C32-C34).  He also testified that "I was concerned that

there had been no defense motions filed, and . . . I knew Mr. Selvey had five or six fairly complex

_____

[3] Robert is not Christopher's father.  See Tr. re: Mot. to Withdraw Plea at 250:13-251:1
(State Ex. F37-F38 (Doc. 8 #6)).

[4] Following this suggestion, there was some discussion of the possibility of reducing the
charge to mitigated deliberate homicide.  See id. at 87:7-22 (State Ex. C37).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

cases that he was handling at that time, and . . . I also knew that there was a certain amount of upheaval in the public defender's office and that Mr. Selvey was at times distracted with other cases and other business." Id. at 82:24-83:7 (State Ex. C32-C33).

Selvey testified that he considered War Club's case for mitigation and also "looked for trying to prove that maybe it wasn't Mr. War Club who did the act, but that it was his nephew," Christopher. Id. at 120:8-21 (State Ex. D13). War Club expressed no interest in a plea to mitigated deliberate homicide, and the State later made it clear that it would not agree to charge a lesser offense. See id. at 137:1-16 (State Ex. D30). After War Club's psychological evaluation in the fall of 2002, Selvey read Dr. Rich's report and discussed the matter with him and concluded that "[t]here appeared to be no concern from the experts." Id. at 158:23-24 (State Ex. D51); id. at 255:1-19 (State Ex. F42 (Doc. 8 #6)). Additionally, a Dr. Recor had evaluated War Club early in the case, but counsel had concluded that there was no support for a defense of mental disease or defect. See id. at 234:5-236:18 (State Ex. F21-F23). When the trial court asked Selvey how much pressure he had put on War Club to convince him to plead guilty, Selvey responded, "None." Id. at 204:18-21 (State Ex. E46 (Doc. 8 #5)).

The trial court found that War Club's counsel were fully prepared for trial and that War Club voluntarily chose to waive his right to a jury trial, believing that pleading guilty was in his best interest and free of any undue influence, hopes, or fears. The trial court concluded that counsel were not ineffective and War Club was not entitled to withdraw his guilty plea. See id. at 319:15-325:18 (State Ex. G37-G43). On January 13, 2003, Edwards withdrew as counsel, and the Yellowstone County Public Defenders resumed responsibility for the case. See Warclub, 114 P.3d at 256 ¶ 13.

On March 14, 2003, War Club, acting pro se, moved to recuse the Honorable Todd G. Baugh, who had presided to date, and his new public defender, Carl DeBelly.[5]  That motion was denied. Thereafter, War Club filed a series of pro se motions.  A hearing was held on April 1, 2003.  Among other things, War Club claimed that investigators for the Public Defenders had recorded a confession from him and then destroyed it.  See Tr. re: Pro Se Mots. at 8:24-9:3; id. at 14:13-16 (State Ex. H8-H9, H14).  Compare Tr. re: Mot. to Withdraw Plea at 44:9-17 (State Ex. B48); id. at 60:4-5 (State Ex. C10) (claiming that police took written statement and later said they threw it away).[6]  The trial court denied War Club's pro se motions.  See Tr. re: Pro Se Mots. (State Ex. H1-H52).

On April 15, 2003, a sentencing hearing was held.  DeBelly attempted to call Dr. Recor, who had evaluated War Club for the Public Defenders Office early in the case, to give testimony about War Club's psychological functioning and early childhood experiences.  War Club refused to allow him to testify.  See Tr. re: Sentencing at 5:13-6:24 (State Ex. H57-H58); see also Tr re: Pro Se Mots. at 21:4-25 (State Ex. H21).  War Club was sentenced to serve 55 years in prison, with an additional ten years, consecutive, for use of a weapon.  No restriction on his parole eligibility was imposed. See Tr. re: Sentencing at 23:24-24:2 (State Ex. H75-H76).

Represented by new counsel Robert Kelleher, War Club appealed the trial court's denial of his motion to withdraw his guilty plea.  He argued that the trial court's failure to inquire at the change of plea hearing whether War Club was satisfied with his counsel made the colloquy

---

[5] Selvey left the office in December 2002.

[6] War Club testified at a suppression hearing that detectives threatened to harm him if he did not confess to killing Pacheco.  The motion to suppress was denied based on a factual finding that the detectives were credible and War Club was not.  See Tr. re: Pro Se Mots. at 26:23-28:25 (State Ex. H26-H28); Case Register Report (State Ex. K2).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

"inadequate as a matter of law" and should result in a finding of good cause to withdraw the plea.

He did not argue that counsel was ineffective.  See Warclub, 114 P.3d at 260 ¶ 31; see also Appellant

Br. (State Ex. I1-I26 (Doc. 8 #9)).  War Club made no reference to federal law or to a state case

interpreting or applying federal law.  See Appellant Br. at 13-21 (State Ex. I16-I24).  The State

referred to federal law only in support of its argument that War Club abandoned his claim of

ineffective assistance.  See Resp't Br. at 15-16 (State Ex. I47-I48).  The Montana Supreme Court,

after clarifying the standard for evaluating a motion to withdraw a guilty plea, held that War Club

had not shown good cause to withdraw his guilty plea:

> [T]he District Court had only a few days prior to [the change of plea hearing] inquired into Warclub's dissatisfaction with his counsel and determined that Warclub was unable to articulate any ways in which his counsel was deficient.  The District Court also had before it a series of appropriate motions and briefs filed by Warclub's counsel throughout the proceedings, and Warclub's written, signed Acknowledgment of Waiver of Rights which stated that Warclub was satisfied with his counsel. Furthermore, in this particular case, Warclub's satisfaction or dissatisfaction with counsel had no bearing upon whether he understood the consequences of his plea, or whether his plea was induced by threats, misrepresentation, or an improper promise. While we will consider other factors that bear upon voluntariness, or that implicate good cause pursuant to § 46-16-105(2), MCA, we find none here.

Warclub, 114 P.3d at 260-61 ¶ 34.  On June 14, 2005, the court affirmed War Club's conviction.

See id. at 255 ¶ 1.

War Club contends that he filed a petition for postconviction relief and a postconviction

appeal that was "unacknowledge[d]" and "filed by letter" on July 20, 2005.  See Pet. (Doc. 1) at 3,

¶¶ 11-12.  The state court's docket does not reflect any filing by him after the Montana Supreme

Court affirmed on direct appeal.  See Case Register Report (State Ex. K5).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

War Club filed his petition in this Court on May 14, 2007.[7]

## II. War Club's Allegations

The sole claim for relief in War Club's Petition is "ACTUAL INNOCENCE." He avers:

On October 9, 2001 "War Club" plead not guilty to one count of Deliberate Homicide for the murder of Domingo Pacheco on October 1st 2001. On July 24, 2002 "War Club" plead guilty to the charge of Deliberate Homicide. On July 27, 2002 "War Club" sent counsel a motion to withdraw said plea due to the fact that "War Club" is not guilty of the murder of Mr. Pacheco.

Pet. at 4, ¶ 15A.

War Club's motion to amend alleges that Christopher recanted his previous statements and suggests that the State willfully destroyed evidence. See Pet'r Mot. for Leave (Doc. 25) at 2-3. War Club also submitted a police report detailing an officer's conversation with witness James Moore, who said that War Club and "the other guy," Christopher, "were together" and suggested that one person could not have stabbed Pacheco so many times without getting tired. See id. (Doc. 25 #1) at 1 (Billings Police Dep't Supp. Report Oct. 7, 2002)). Based on these allegations, War Club seeks additional time to submit evidence showing his innocence.

## III. Analysis

As set forth above, it is more efficient to step over the threshold procedural issues and address the petition on its merits. See, e.g., 28 U.S.C. § 2254(b)(2); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar).

---

[7] War Club did not date or, originally, even sign his Petition. See Pet. at 8. Therefore, the Court cannot give him the benefit of the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 270-71 (1988).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

## A. "Freestanding" Claim of Actual Innocence

A "freestanding" claim of actual innocence alleges no constitutional error in the state proceedings but asserts that the petitioner is innocent. It is an open question whether a freestanding claim of actual innocence can entitle a state prisoner to federal habeas relief. See, e.g., Osborne v. District Attorney's Office, 521 F.3d 1118, 1130 (9th Cir. 2008) (discussing Supreme Court's assumptions in various cases). Assuming relief is available, the petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).

Even if Christopher assumed full responsibility and swore under oath that War Club played no role in Pacheco's murder, that would not meet the Carriger standard. War Club confessed. The trial court heard and denied his challenge to the voluntariness of his confession. Moore's statement, see Billings Police Dep't Supp. Report Oct. 7, 2002, does not exculpate War Club. It inculpates Christopher in addition to War Club. War Club's own self-exculpatory statements do not come close to making an affirmative showing that he is actually innocent. There is no reason to believe that he could produce evidence of his innocence if only he were given more than the seven years he has already had.

Consequently, War Club may obtain federal habeas relief only if he shows that his guilty plea was tainted by constitutional error. Only two constitutional errors can vitiate a guilty plea: lack of jurisdiction in the trial court or involuntariness in the plea. See, e.g., Blackledge v. Perry, 417 U.S. 21, 30 (1974); Tollett v. Henderson, 411 U.S. 258, 267 (1973). It is impossible for War Club to support either claim.

**B. Jurisdiction**

There is no doubt that the trial court had jurisdiction.  See Mont. Code Ann. § 3-5-302(1)(a)

(2001).

**C. Voluntariness of Guilty Plea**

A guilty plea must be the voluntary expression of the defendant's own choice.  See Brady v.

United States, 397 U.S. 742, 748 (1970); Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986).  A guilty

plea is not rendered involuntary even if the defendant enters it solely to avoid the death penalty.  See

Brady, 397 U.S. at 750; see also Iaea, 800 F.2d at 867 ("Mere advice or strong urging by third parties

to plead guilty based on the strength of the [prosecutor's] case does not constitute undue coercion.").

Nothing in the state court record or in War Club's submissions to this Court indicates that

he was unaware of any consequence of pleading guilty.  See Brady, 397 U.S. at 755.  He says that

he responded to the trial court's questions as he did because Selvey told him he must if his guilty

plea was to be accepted.  In other words, War Club wanted the trial court to accept his guilty plea.

He has never specified any improper promise or threat that induced him to plead guilty.  See id.  On

the contrary, he repeatedly says that he entered the plea because Selvey advised him that he would

receive a harsher sentence if he went to trial.  That was a reasonable assumption because it appeared

that the evidence against him was overwhelming.  War Club made a rational decision to plead guilty

and, by doing so, he limited his exposure at sentencing.  There is no constitutional infirmity in such

a bargain.

A guilty plea might be rendered involuntary if it was based on ineffective assistance of

counsel.  Despite ample opportunity, War Club did not identify in the state proceedings and has not identified here any respect in which counsel's performance fell below an objective standard of reasonableness and resulted in prejudice to him.  See Strickland v. Washington, 466 U.S. 668, 87-88 (1984); Hill v. Lockhart, 474 U.S. 52, 59 (1985).

A guilty plea might be rendered involuntary if it was based on the prosecution's withholding of material, exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963).  War Club has asserted that the detectives who questioned him on October 2, 2001, destroyed evidence of his statements.  But there is no doubt that War Club knew what he said to the detectives, and the detectives testified at the suppression hearing about what they heard from him and what they did. See note 6, supra.  Thus, he had access to the evidence, though not perhaps in a certain form. Additionally, because War Club has not shown that his self-interested statements were particularly weighty for some reason, he cannot show prejudice.  See United States v. Agurs, 427 U.S. 97, 103-04 (1976) (describing the Brady right as a right to evidence that might make a difference in the outcome of a trial).  No other potential Brady violation appears in the record before the Court.

Likewise, no other factor rendering War Club's guilty plea involuntary, and no other basis for federal habeas relief, appears in the record before the Court.  The petition should be denied.

**IV. Outstanding Motions**

War Club has had seven years to gather evidence of his innocence.  He has not given the Court any reason to believe he might be able to find something new.  Even if Christopher were to accept all the blame for Pacheco's death, War Club is implicated by other witnesses and by his own confession.  The motion for leave to amend should be denied.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

Additionally, the State moved for a protective order on February 19, 2008, so that it could obtain and file psychological evaluations of War Club that are available only from defense counsel. The motion was denied subject to renewal after the Court had reviewed the materials already supplied with the Answer.  Based on the several references to the evaluations in the state court record, the case is properly resolved without them.

**V. Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Any doubt as to whether a petitioner has met the standard is resolved in his favor. Lambright, 220 F.3d at 1025.  The Court must "state why a certificate should not issue."  Fed. R. App. P. 22(b)(1) (emphasis added).

Although War Club's sole claim for relief is titled "ACTUAL INNOCENCE," he has no evidence whatever, other than his own statements, to show that he is innocent.  That is not enough

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

by any standard.  A COA is not warranted on this claim.

War Club does not fairly allege a constitutional violation.  With extremely liberal construction, he might be understood to challenge the validity of his guilty plea.  But no legal support for that claim materializes.  The trial court clearly had jurisdiction.  War Club tried to show in state court that he should be permitted to withdraw his guilty plea, but he has never identified a constitutional defect in it.  There is no indication in the state court record, and War Club does not allege in this Court, that he was unaware of any consequences of his plea or that his plea was induced by an improper promise or threat.  He pled guilty in order to limit his exposure at sentencing.  Although he has claimed that certain evidence was destroyed or suppressed in violation of his <u>Brady</u> rights, he cannot show prejudice from detectives' failure to memorialize or preserve his own statements in a form other than their own testimony, and he has not identified any other evidence that was "withheld."

Reasonable jurists might differ as to the correct analytic path to take in this case, but there is no doubt at all about the destination.  War Club has not made any showing at all, and none can be inferred from the record, that he was deprived of a constitutional right.  A COA should be denied.

Based on the foregoing, the Court enters the following:

<u>**RECOMMENDATION**</u>

1.  War Club's Petition (Doc. 1) should be DENIED on the merits.

2.  War Club's motion for leave to amend (Doc. 23) should be DENIED as futile.

3.  The Clerk of Court should be directed to enter Judgment by separate document in favor of Respondents and against War Club.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

4.  A certificate of appealability should be DENIED.


**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND
CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

War Club must immediately inform the Court and opposing counsel of any change in his mailing address.  Failure to do so may result in dismissal of the petition without notice to him.

DATED this 6th day of August, 2008.


/s/ Carolyn S. Ostby_____
Carolyn S. Ostby
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16